METROPOLITAN BUSINESS COLLEGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5717.   Decided October 4, 1926.

Petitioner was not a personal service corporation during 1918 and 1919.

*Forest D. Siefkin, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the respondent.

This proceeding involves deficiencies in income and profits tax for 1918 and 1919 in the amounts of $8,051.06 and $5,478.23, respectively, arising from the denial of the petitioner's claim that it should be classified as a personal service corporation.

FINDINGS OF FACT.

The petitioner is an Illinois corporation, organized in 1897 for the purpose of operating business schools, with principal office at Chicago. It succeeded the business college which had been conducted by O. M. Powers.

From incorporation Powers was the sole owner, except for two qualifying shares of stock, until 1903, when the school was reorganized and some of the stock was sold to teachers who had been with the school for a number of years.

During the taxable years petitioner operated 13 schools, the central school being located in the downtown district of Chicago. There were 9 branches in the City of Chicago, the one farthest from the

central school being about 11 miles distant. Branches were also maintained in the towns of Elgin, Aurora and Joliet, Ill., about 40 miles from the central school.

Elementary instruction in business and commercial subjects was given. During 1918 and 1919, 50 teachers were employed, and 5,000 students were enrolled. Solicitors were employed, many of whom were teachers who solicited enrollment on Saturdays and at such other times as they were not engaged in the classroom.

The capital stock of the corporation during 1918 and 1919 consisted of 1,000 shares of the par value of $100 each. Its tangible property consisted of desks, typewriters, and the usual school equipment necessary in conducting a school offering business courses. With the exception of 10 shares of stock owned by Edwin B. Powers, a son, and 20 shares owned by Eva A. Powers, a daughter of O. M. Powers, acquired by them as an inheritance from their mother, the petitioner's stock was owned by persons actively engaged in the conduct of petitioner's affairs.

O. M. Powers held the office of president and owned 81 per cent of the stock. J. A. Stevens, the vice president, owned 11⅓ per cent of the stock, and C. W. Reynolds, the treasurer, owned 4.7 per cent of the stock. These men regularly devoted themselves to the affairs of the petitioner and allied enterprises. Prior to 1918 these men had acquired all of the stock of Orr's Business College, situated in Chicago, and during 1918 and 1919 operated that institution as one of a chain of 14 schools in Chicago and suburban localities. The petitioner had an investment of $8,769.04 in Orr's Business College.

Powers and Stevens had written several textbooks on commercial and business subjects. Prior to 1918 the Metropolitan Textbook Co., a corporation, was organized for the purpose of publishing these books, and in 1918 and 1919 all of the stock of the textbook company was owned by Powers, Stevens and Reynolds. The petitioner also had an investment of $7,796.71 in the textbook company and derived a substantial income from sales of textbooks published by that company.

During the taxable years the stock in the three associated companies was owned as follows:

| | Metropolitan Business College. | Orr's Business College. | Metropolitan Textbook Co |
|---|---|---|---|
| | Shares. | Shares. | Shares. |
| Powers | 810 | 430 | 40 |
| Stevens | 113 | 50 | 40 |
| Reynolds | 47 | 20 | 65 |
| Children of Powers | 30 | | |
| Total | 1,000 | 500 | 145 |

57694°—27——5

Suitable space was engaged for each branch school, necessary equipment was secured, teachers were employed, and in every particular the courses were identical with those at the central school, and such changes as were made in the course of study by the principal stockholders were put into effect in the branch schools. A head teacher was employed at each branch school, but no authority was given to him to change the course of instruction as specified. The business came to each of the branch schools just as it did to the parent school prior to the establishment of the branches. The publicity and advertising in connection with the branches was the same as that for the central school, always emphasizing the fact that the principal stockholders, and particularly Powers, were at the head of the school, and that the courses of instruction were those specified by Powers.

Typewriters were furnished to students without charge, but necessary stationery and supplies were sold to them at prices in excess of cost.

The following are the gross receipts of the three affiliated corporations for the years in question:

|  | 1918. | 1919. |
|---|---|---|
| Income from sale of books and supplies | $6,780.87 | $6,441.90 |
| Liberty bond interest | 28.44 | 162.33 |
| Interest from other sources | 552.47 | 359.25 |
| Rentals | 8,198.14 | 9,937.92 |
| Tuition | 145,916.33 | 157,339.65 |
| Total | 161,476.25 | 174,241.06 |

The item of rentals consists of amounts received under subleases. In negotiating for space for some of the schools, it was necessary to lease more space than was actually necessary at the time, either to provide for expansion, or in order to obtain the space needed. This surplus space was re-rented at a profit. The entire amount so received is included in the above-mentioned item and does not take into consideration the amount paid by the petitioner for the same space. In two of the schools, namely, Garfield Park and Lake View, long-term leases were entered into for considerably more space than was required, in order to secure the particular location desired. A leasehold account was entered upon the ledger for these two schools. These accounts were debited with the amount of rent and incidental expenses paid and credited with the amount of rent received for the portion of the property sublet. The space available for subletting by other branches was not large enough to justify the opening of a special account, and in such instances the rent account was charged with the rent and incidental expenses paid and credited with amounts received from such tenants, the balance representing the net cost of rent in those particular schools.

The following shows the assets and liabilities at the end of each of the years 1918 and 1919:

| | 1918. | 1919. |
|---|---|---|
| ASSETS. | | |
| Cash | $3, 592. 30 | $1, 800. 35 |
| Intangible assets | 67, 535. 87 | 67, 535. 87 |
| Lake View Leasehold | 7, 000. 00 | 5, 500. 00 |
| Garfield Leasehold | 9, 000. 00 | 8, 000. 00 |
| Fixtures | 43, 351. 10 | 42, 153. 41 |
| South Side Investment | 8, 410. 40 | 8, 965. 65 |
| Stationery | 4, 724. 06 | 4, 539. 32 |
| Liberty bonds | 2, 750. 00 | 5, 221. 75 |
| Auto account | 800. 00 | 1, 750. 00 |
| Bills receivable | 6, 203. 92 | 6, 342. 84 |
| War savings stamps | | 15. 00 |
| | 153, 367. 65 | 151, 824. 19 |
| LIABILITIES. | | |
| Capital stock | 100, 000. 00 | 100, 000. 00 |
| Unpaid bills | 1, 759. 28 | 6, 178. 78 |
| Counting house deposit | 45. 30 | 57. 30 |
| Deposit | 139. 98 | 139. 98 |
| Surplus | 26, 747. 76 | 19, 723. 00 |
| Bills payable | 1, 700. 09 | 2, 700. 09 |
| Gain | 22, 975. 24 | 21, 979. 82 |
| Shortwriter Company | | 1, 045. 22 |
| | 153, 367. 65 | 151, 824. 19 |

The Lake View and the Garfield leaseholds shown in the above assets represent the balance of these accounts at the close of each year. At the time these leases were secured, an entry was made upon the books debiting leasehold account and crediting surplus. These leases are being exhausted ratably over the terms thereof.

The South Side investment of $8,410.40 at the end of the year 1918 and $8,965.65 at the end of the year 1919 represents money advanced by petitioner to Orr's Business College.

The bills receivable of $6,203.92 at the end of the year 1918 and $6,342.84 at the end of the year 1919 consist principally of notes of the Metropolitan Textbook Co. Prior to 1912 petitioner published its own textbooks. In 1912 the textbook company was organized and it purchased the machinery, plates, copyrights, books on hand, etc., from the Metropolitan Business College, paying a portion of the purchase price in cash and giving its interest-bearing notes for the balance.

Powers, the president, devoted all of his time to the affairs of the school and received a salary of $5,000 per annum. Stevens devoted all of his time to the corporation and received a salary of $5,000 per annum. Reynolds, treasurer, devoted about one-half of his time to the business of the petitioner and received a salary of $1,000 for the year 1918 and no salary for the year 1919. He was also paid a salary each year by the Metropolitan Textbook Co., to which he devoted one-half of his time, of $3,500 per annum.

## OPINION.

LITTLETON: The question presented is whether the Commissioner erred in holding that the petitioner was not entitled to be classified

as a personal service corporation during the years in question within the meaning of section 200 of the Revenue Act of 1918.

The petitioner contends that this case comes squarely within the decision of the Board in the *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32, and that its income was not materially produced by capital, but was ascribable primarily to the activities of the principal stockholders. Whether a corporation is entitled to be classified as a personal service corporation must in each instance be decided on the facts established. In the opinion of the Board, the facts in this case clearly distinguish it from the *Bryant & Stratton* appeal. The record shows that in 1919 petitioner received $157,339.65 as tuition and expended for advertising, catalogues and soliciting $32,485.23. The amount expended for advertising was 50 per cent greater than the net income of $21,-979.82 for the year. The percentage of tuition paid out for advertising in the *Bryant & Stratton* appeal was less than 9 per cent, whereas in this proceeding such expenditure is shown to have been approximately 21 per cent.

This comparison brings out one of the striking differences between the two institutions. During the year 1919 the Bryant & Stratton School received a gross income from the sale of books and stationery of $3,846.45. This gross income represented a slight advance over cost to cover maintenance of the department. In the instant case, the gross income from books and stationery was $6,441.91, of which more than 50 per cent represented net profit. A large portion of this profit arose from selling books written by Powers and Stevens and published by the Metropolitan Textbook Co., all of the stock of which was owned by the principal stockholders of the petitioner. In addition to this net profit from the sale of the books, the petitioner received $495.38 from its investments in the textbook company. Of the three principal officers of the petitioner, Reynolds had the chief responsibility and was the active man in conducting the affairs of the textbook company. During 1918 he was paid a salary of $1,000 by petitioner and in 1919 it paid him no salary. However, he was paid a salary of $3,500 each year by the textbook company. He was actively engaged in the affairs of both corporations and devoted about one-half of his time to each. The two corporations were owned by the same three men who were in a position to adjust their salaries between the two corporations as they might desire. The result of the arrangements was that the textbook company paid all of Reynolds' salary in 1919 for his combined services. The petitioner thus profited to the extent of about $1,750 from its relation with the textbook company.

The Bryant & Stratton School, upon the decision of whose appeal the petitioner relies, chose to sell stationery and books to its students merely as a matter of convenience and without any net profit.

The petitioner elected to make a substantial investment in the company organized to publish its officers' books and to make a profit from its dealings in those books. The profits from sales of stationery and books and in the investment in the textbook company aggregated approximately 25 per cent of the total net income of $21,979.82 for 1919, and the percentage was approximately the same for 1918. At the beginning of 1918, petitioner held notes aggregating $7,796.71 in the textbook company, which notes, less comparatively small payments, were held throughout 1918 and 1919 and produced revenue in both years.

At the end of the year 1918, petitioner carried in its balance sheet as an asset described as " South Side Investment, $8,410.40." This item represented advances to Orr's Business College, and was carried through the years 1918 and 1919. Orr's Business College was a separate corporation and the investment was made for the purpose of profit. It also carried upon its balance sheet as an asset an item, described as " Lake View Leasehold," at $7,000, and another item, described as " Garfield Leasehold," at a value of $9,000. It was the petitioner's custom to lease more space than was necessary for its own purposes and to sublet the extra space. In the matter of investments, outside the primary functions of giving business instructions, the proceeding differs from the case cited in that petitioner had approximately $32,000 in such investments as compared with none in the case relied upon.

We are of opinion that capital was a material income-producing factor, and that the petitioner is not therefore entitled to classification as a personal service corporation under section 200 of the Revenue Act of 1918.

> *Order of redetermination will be entered on*
> *15 days' notice, under Rule 50.*

TRAMMELL concurs in the result only.